UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSIE PERRY,

                  Petitioner,                  Case No. 2:17-cv-12636
                                                                    Hon. Sean F. Cox

v.

CONNIE HORTON,

                  Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Petitioner Jessie Perry was convicted after a jury trial in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. He was sentenced to 12 to 30 years for the murder conviction and a consecutive two years for the firearm conviction. The petition raises three claims: (1) insufficient evidence was presented at trial to sustain Petitioner's convictions, (2) the prosecutor impermissibly struck jurors on the basis of race, and (3) the trial court scored the sentencing guidelines based on facts not proven beyond a reasonable doubt. The Court will deny the petition because the claims are without merit. The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis.

1

# I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of the shooting death of Raymond Cantu. According to Stephen Lemley, he, defendant, Jon Hodges, Steven Tolley, and Jose Ruiz were at David Earls' house when they became aware that Cantu was outside. Lemley testified that Cantu "had beef" with him, that Cantu wanted to kill him, and that the group went outside. Lemley continued, testifying that when Cantu pointed what he eventually learned was a staple gun at him, he fired a shotgun at Cantu twice. According to Hodges, defendant then racked a .45-caliber handgun, Ruiz took the handgun, and Ruiz fired "[a]bout six" shots at Cantu before returning the handgun to defendant. Hodges testified that defendant then [drew] a second firearm and fired two more shots at Cantu. Cantu eventually died from multiple gunshot wounds. After the shooting, the five men drove to a bar and, according to Hodges, defendant and Lemley hid two of the firearms inside.

*People v. Perry*, 2016 WL 6127819, at *1 (Mich. Ct. App. Oct. 18, 2016).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the following claims:

> I. The jury verdict was based on insufficient evidence and/or against the great weight of the evidence to convict defendant of second-degree murder and felony firearm when defendant did nothing to knowingly aid and abet Jose Ruiz in his perpetration of the crime.
>
> II. Defendant was denied the right to equal protection and his right to an impartial jury where the prosecutor struck members of his ethnic group solely on the basis of race.
>
> III. Defendant is entitled to resentencing because the scoring of the offense variable can only occur through improper judicial fact-finding and the 12-year minimum sentence imposed is not reasonable considering defendant's alleged role in the offense as an aider and abettor.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Perry*, 895 N.W.2d 525 (Mich. 2017) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529

U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); see also *Woods v. Etherton,* No. 15-723, 2016 WL 1278478, at *3 (U.S. Apr. 4, 2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.")

**III. Analysis**

A. Sufficiency of the Evidence

Petitioner first asserts that insufficient evidence was presented at his trial to sustain his convictions. He asserts that there was no reliable evidence at trial proving that he knowingly aided Jose Ruiz in committing the crimes. He asserts that Hodges' testimony implicating him was inconsistent with his statement to police and was otherwise not credible considering Hodge's favorable plea deal.

This claim was rejected on the merits by the Michigan Court of Appeals during Petitioner's appeal of right. After reciting the constitutional standard governing sufficiency of the evidence claims, the state court rejected Petitioner's claims as follows:

> Defendant's position on appeal is clear—he argues that there was insufficient evidence to convict him under an aiding-and-abetting theory. This argument is meritless. As indicated by the trial court's jury instructions, the information, and the complaint, defendant was charged with murder *or* aiding and abetting murder. Hodges testified that, after Ruiz fired the handgun that defendant racked, defendant withdrew a second firearm and fired two additional shots at Cantu. This testimony, if believed by the jury, was sufficient to support the jury's verdict without resorting to an aiding and abetting theory. *Avant*, 235 Mich. App. at 506. For the sake of thoroughness, however, we will address defendant's

arguments on appeal despite the fact that they rely on the assumption that the jury convicted under an aiding-and-abetting theory only.

Aiding and abetting is not a separate substantive offense; it is a theory of prosecution that permits imposition of vicarious liability on an accomplice. *Robinson*, 475 Mich. at 6. Conviction under a theory of aiding requires proving beyond a reasonable doubt (1) that the crime charged was committed by the defendant or some other person, (2) that the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense. *Id*. Here, the second and third requirements are at issue. Specifically, defendant claims that the evidence presented by the prosecution proved that he was merely present with his gun when Cantu was killed, not that he performed acts or gave encouragement that assisted Ruiz, nor that he intended to kill or knew Ruiz intended to kill Cantu.

We agree with the prosecution's position that, by racking the firearm before Ruiz took it, defendant performed acts or gave encouragement that assisted Ruiz as well as intended to kill or knew that Ruiz intended to kill Cantu. The jury was free to believe or disbelieve Hodges' testimony in this regard, and we defer to the jury's superior ability to assess witness credibility. *Avant*, 235 Mich. App. at 506. Had defendant merely been present as he contends, our conclusion may well have been different, but those are not the facts presented here. Rather, the testimony indicated defendant racked the handgun, thus preparing it to be used in shooting Cantu. Accordingly, the prosecution presented sufficient evidence to support the jury's verdicts.

*Perry*, 2016 WL 6127819, at *2.

In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court may not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that

5

of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[E]ven were [the court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see* 28 U.S.C. § 2254(d)(2).

The evidence presented at Petitioner's trial was sufficient to allow the jury to find beyond a reasonable doubt that he either was guilty as a principal or aided Ruiz in the murder. Jon Hodges testified that he was initially charged with murder but accepted a plea deal to accessory after the fact. Dkt. 8-9, at 76-77. He testified that on the date of the murder he went to a residence in Detroit with Stephen Lemley, Steven Tolley, Petitioner, and Jose Ruiz. *Id.* at 78. Tolley said that he saw somebody standing outside. *Id.* at 79. The five men went outside and found the victim cussing into a cellphone. *Id.* at 79-80.

Hodges saw Lemley fire a shotgun at the victim. *Id.* at 81. Hodges then saw Petitioner produce and rack a silver .45 handgun. *Id.* at 81. Ruiz took the handgun from Petitioner, and then he fired about six shots at the victim. *Id.* at 82. Petitioner took the gun back from Ruiz. *Id.* at 82. Hodges saw Petitioner pull out a different handgun, and he then saw Petitioner shoot it in the direction of the victim a couple of times. *Id.* at 82-83.

The five men went to a bar and hid the guns there. *Id.* They subsequently drove to a location in Melvindale where Petitioner told Hodges that if he ever said anything about the incident, Petitioner would kill him. *Id.* at 84. The next morning Hodges was

arrested, and he gave a statement to the police that Petitioner had the .45 handgun and that Lemley was the one who fired the shotgun. *Id.* at 85.

The fact that Petitioner attempted to impeach Hodge's credibility based on the favorable plea bargain and based on perceived inconsistencies between his statement and testimony does not speak to the constitutional sufficiency of the evidence. A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor was observed by the trial court. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The jury obviously chose to accept Hodge's testimony as true, and that credibility determination allowed them to find Petitioner guilty of murder beyond a reasonable doubt either as an aider (for handing the firearm to Ruiz) or as a principal (for shooting the victim a few times with the other handgun). "[T]he testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985) (internal citations omitted). This claim is without merit.

B. Jury Selection

Petitioner next asserts that the prosecutor improperly struck four African-American jurors from the jury panel. The Michigan Court of Appeals rejected this claim on the merits. After reciting the controlling constitutional standard, the court of appeals found that Petitioner failed to demonstrate entitlement to relief:

> [I]t is undisputed that the prosecutor articulated racially neutral reasons to support her peremptory challenges of the four jurors at issue. Specifically, the prosecutor dismissed the first juror because she admitted that she has had multiple negative experiences with police, including

7

> situations where she believed that she or others were racially profiled; the prosecutor dismissed the second juror because she admitted that she has had negative experiences with police, including a situation where her son was unfairly charged with and convicted of armed robbery; the prosecutor dismissed the third juror because she admitted that she would be uncomfortable in rendering a guilty verdict; and the prosecutor dismissed the fourth juror because she admitted that her father was convicted of first-degree murder. For the sake of thoroughness, it should be noted that the prosecutor also exercised peremptory challenges with respect to jurors who were not African American. With respect to the third requirement, defendant argues that the racially neutral reasons articulated by the prosecutor were merely a pretext, pointing to the fact that the jurors indicated that their negative experiences with the criminal justice system would not impact their ability to be fair. The fact that the jurors indicated that they could be fair, or, with respect to one of the jurors, that they were at least willing to "hear the testimony," is not dispositive of defendant's arguments. It was reasonable for the prosecutor to strike jurors who believed law enforcement racially profiled, who had negative experiences with police, who would not be comfortable rendering a guilty verdict, and who had a father who was convicted of first-degree murder. The prosecutor could very well have believed that these negative experiences trumped the jurors' agreements to be fair, and the trial court was in a much better position to determine the prosecutor's credibility in that regard. Accordingly, we conclude that the trial court properly denied defendant's *Batson* challenge.

*Perry*, 2016 WL 6127819, at *3-4.

The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from using a peremptory challenge to exclude members of the jury venire because of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). In *Batson*, the Supreme Court articulated a three-step process for evaluating claims when a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. *Id.* at 96-98. First, the court must determine whether the defendant made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race. *Id.* at 96-97. Second, if the showing is made, the burden shifts to the prosecutor to present

a race-neutral explanation for striking the juror. *Id.* at 97-98. "Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006), quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). Third, if a race-neutral explanation is offered, the court must then determine whether the defendant carried the burden to prove purposeful discrimination. *Batson*, 476 U.S. at 98.

The state court adjudication of this claim did not contravene the *Batson* standard. After finding that a prima facie showing was made, the prosecutor offered a race-neutral explanation for the four challenged strikes:

> Prosecutor: Judge, Juror Number 1, Miss Wood, indicated that she had negative experience with the police. She felt that the police racially profiled, and that she herself specifically with Detroit police had, had negative experiences with the police.
>
> Juror Number 2, Miss Thompkins, her son was convicted of homicide. I'm sorry. Was convicted of armed robbery. And she indicated specifically that she felt that the Detroit Police treated her son unfairly.
>
> Juror Number 10, Miss Jackson, when I asked her if she could render a guilty verdict she said that she would be uncomfortable doing so.
>
> And Juror Number 14, Miss Pack, father was convicted of First Degree Murder.

Dkt. 8-7, at 116.

The trial court then conducted the final step of the *Batson* challenge, and it determined that the strikes were not the result of purposeful discrimination:

> The Court: I'm finding that three of the jurors excused by the prosecution were not African-Americans, and the four that were, there each was an

9

> independent reason that I think is legitimate without having anything to do with race.

*Id.* at 118.

The trial court found that the prosecutor's race-neutral explanation for the strikes was credible. "'The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis, and once that has been settled, there seems nothing left to review.'" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (quoting *Hernandez v. New York*, 500 U.S. 352, 367 (1991)). This is because "a state court's finding of the absence of discriminatory intent is 'a pure issue of fact' accorded significant deference[.]" *Id.* at 339. On habeas review, findings of fact made by the state court are presumptively correct and must be rebutted by the petitioner by clear and convincing evidence. 28 U.S.C § 2254(e)(1). Petitioner has not rebutted with clear and convincing evidence the factual finding by the trial court that the prosecutor's race-neutral explanations for the strikes were credible. Therefore, this Court must defer to the state court's ruling on the issue of purposeful discrimination, and to the state appellate court's conclusion that no *Batson* error occurred. Habeas relief is not warranted on this claim.

C. Sentencing Guidelines

Petitioner's final claim asserts that the trial court violated his Sixth Amendment jury trial rights by considering facts not proven beyond a reasonable doubt in scoring the sentencing guidelines. The Michigan Court of Appeals rejected this claim on the merits as follow:

> In *People v. Lockridge*, 498 Mich. 359, 364 (2015), our Supreme Court held that a defendant's Sixth Amendment rights are violated when judicially found facts are used to increase his or her minimum sentence.

10

Thus, "[t]o remedy the constitutional violation," the Supreme Court "sever[ed] MICH. COMP. LAWS § 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Id.* If, however, the facts admitted by the defendant or found by the jury are sufficient to score the offense variables, relief is not required. *Id.* at 395.

Here, the trial court's 25-point score for OV 1, which is appropriate where "[a] firearm was discharged at or toward a human being[,]" MICH. COMP. LAWS § 777.31(1)(a), was supported by facts found by the jury. Specifically, in order to find defendant guilty of second-degree murder, the jury was required to find that a firearm was discharged at the victim, which is all that is required to support a 25-point OV 1 score. Similarly, the trial court's 25-point score for OV 6, which is appropriate where "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result[,]" MICH. COMP. LAWS § 777.36(1)(b), was also supported by facts found by the jury. Specifically, in order to find defendant guilty of second-degree murder, the jury was required to find that defendant acted with malice, which "is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 457 Mich. 442, 464 (1998). Accordingly, we conclude that resentencing is not required based on the trial court's scoring of OVs 1 and 6.

*Perry*, 2016 WL 6127819, at *4-5.

Under clearly established Supreme Court law, any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense and must be proved beyond a reasonable doubt. See *Alleyne v. United States*, 570 U.S. 99, 103 (2013). *Alleyne* expanded the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), in which the Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the

offense must be submitted to the jury. The Michigan Supreme Court relied on *Alleyne* to hold that Michigan's mandatory sentencing guidelines scheme violated the Sixth Amendment right to a jury trial. See *People v. Lockridge*, 498 Mich. 358 (2015). Moreover, the Sixth Circuit recently granted habeas relief on a challenge to Michigan's sentencing guidelines on the basis that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson v. Woods*, No. 16-2067, 2018 WL 4039848, at * 5-6 (6th. Cir. Aug. 24, 2018).

Here, the Michigan Court of Appeals found that no Judge-found facts were used to score the sentencing guidelines. The only Offense Variables challenged by Petitioner concerned the use of a firearm during the offense and the offender's intent to kill or injure. By finding Petitioner guilty of second degree murder under the facts of this case, the jury necessarily found that a gun was used to kill the victim and that Petitioner knew of or shared Ruiz's intent to kill or do great bodily harm. The former finding is based on the uncontroverted evidence at trial indicated that the victim died as the result of gunshot wounds. And the second finding is based on the jury instruction that required the jury to find Petitioner guilty of murder only upon a finding beyond a reasonable doubt that he acted with malice or knew that Ruiz acted with malice. Dkt. 8-10, at 205-06, 208. Therefore, none of the challenged sentencing guideline factors were scored based on facts not proven beyond a reasonable doubt.

As none of Petitioner's claim merit relief, the petition will be denied.

### IV. Certificate of Appealability

The Court will deny a certificate of appealability because jurists of reason would not debate the Court's analysis with respect to any of Petitioner's claims. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). The Court will also deny Petitioner permission to appeal in forma pauperis because any appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: October 24, 2018

s/Sean F. Cox
Sean F. Cox
U. S. District Judge

I hereby certify that on October 24, 2018, the foregoing document was served on counsel of record via electronic means and upon Jessie Perry via First Class mail at the address below:

Jessie Perry
959541
CHIPPEWA CORRECTIONAL FACILITY
4269 W. M-80
KINCHELOE, MI 49784

s/J. McCoy
Case Manager